UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| MATTHEW COLLINS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:22-CV-49-KAC-SKL |
| WARREN COUNTY, TENNESSEE, DANNIE GLOVER, ASHLEY RAMBO, and TOMMY MEYERS, | ) | |
| Defendants.[1] | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff filed this action under 42 U.S.C. § 1983, alleging that Defendants failed to provide adequate medical treatment for a shoulder injury during his incarceration in the Warren County Jail in violation of the Eighth Amendment [Doc. 9].[2] Now before the Court are (1) the motion for summary judgment filed by Defendants Warren County, Tennessee; Ashley Rambo; and Tommy Meyers [Doc. 36]; and (2) Defendant Dannie Glover's motion for summary judgment [Doc. 39]. Plaintiff also filed an unopposed motion for an extension of time to file a response to these motions [Doc. 43] and an accompanying Response [Doc. 44]. For the reasons set forth below, the Court **GRANTS** Plaintiff's unopposed motion for extension of time [Doc. 43]. And the Court **GRANTS** Defendants' motions for summary judgment [Docs. 36; 39] and **DISMISSES** this action.

---

[1] The Court's docket lists Sheriff Jackie Matheny, Jr. as a Defendant in this action. But Plaintiff omitted Sheriff Matheny from his Amended Complaint, which is the operative complaint in this case [*See* Doc. 9]. Accordingly, Sherriff Matheny is not a Defendant in this action. And the Court **DIRECTS** the Clerk to remove him from the docket.

[2] There appears to be confusion regarding whether Plaintiff may have also raised a state law medical negligence claim [*See* Doc. 37 at 2]. But Plaintiff's Amended Complaint only includes one Count—a Section 1983 claim for violation of the Eighth Amendment [*See* Doc. 9 at 7]. To the extent Plaintiff wished to raise a medical negligence claim in his Amended Complaint, he did not adequate plead such a claim. And Defendants are entitled to judgment as a matter of law on any intended, but not pled, medical negligence claim. *See* Fed. R. Civ. P. 56 (a).

## I. PLAINTIFF'S MOTION FOR EXTENSION OF TIME

For good cause shown and with no opposition, the Court **GRANTS** Plaintiff's motion for extension of time to file a response to the motions for summary judgment [Doc. 43]. *See* Fed. R. Civ. P. 6; E.D. Tenn. L.R. 7.2. Therefore, the Court receives Plaintiff's "Response in Opposition to Motions for Summary Judgment" [Doc. 44] as timely filed.

## II. MOTIONS FOR SUMMARY JUDGMENT

### A. Background[3]

#### 1. Facts

On October 8, 2021, Plaintiff, a convicted prisoner housed in the Warren County Jail, injured his shoulder [Docs. 36 at 1; 36-7 at 1; 41 at 1; 44 at 2]. Defendant Dr. Dannie Glover referred Plaintiff for an x-ray [Doc. 36-3 at 3]. On October 11, 2021, Plaintiff received an x-ray at River Park Hospital [Doc. 39-5 at 22-23]. After Defendant Dr. Glover reviewed the x-ray, he referred Plaintiff to an orthopedic specialist [Doc. 36-3 at 3].

On October 14, 2021, Plaintiff saw Tyler Gilley, a physician's assistant at Pinnacle Orthopedics ("PA Gilley") [Doc. 39-5 at 24-25]. As relevant here, PA Gilley recommended that Plaintiff "remain nonweightbearing with the right upper extremity in a sling" for the next three weeks, with removal of the sling two to three times a day "to work on gentle range of motion of the elbow as well as Codman's and pendulum exercises" [*Id.* at 24]. After three weeks, PA Gilley recommended that Plaintiff "slowly discontinue[] the use of the sling and return[] to his normal daily activities" while "refrain[ing] from heavy pushing, pulling and lifting for 6 weeks" [*Id.*]. In his notes from the appointment, PA Gilley stated that (1) he would inform the nurses at the Jail of

---

[3] Because Plaintiff is the non-moving Party, the Court describes the relevant facts in the light most favorable to him. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

this plan, (2) the nurses agreed to the plan, and (3) the nurses "w[ould] let us know if [Plaintiff's] pain continues or worsens" [*Id.*].

At his deposition, Plaintiff first testified that PA Gilley did not tell him how to do the recommended exercises, but Plaintiff later testified that he could not remember whether PA Gilley had told him how to do the exercises [Doc. 39-4 at 8]. Plaintiff additionally testified that his shoulder hurt too badly to do the exercises PA Gilley told him to do, and that he never did those exercises [*Id.*].

On October 25 and 27, 2021, Plaintiff filed two medical grievances and one facility grievance [Docs. 44-2 at 6; 44-3 at 7-8]. An unspecified officer responded to Plaintiff's October 25 medical grievance regarding pain in his shoulder and his inability to sleep by stating "I will try to send something for sleep. No doubt it hurts. Common football injury." [Doc. 44-3 at 8]. Plaintiff responded by filing an October 27 medical grievance indicating that he "never had a football injury," he did not receive anything for sleep, a bone was "sticking out" of his shoulder, he had been in pain for weeks, the responding officer had been saying he would help Plaintiff but had not, and he was "telling Scott" [*Id.* at 7]. An unspecified officer's response was "Fine" [*Id.*]. On October 27, Plaintiff also filed a facility grievance stating that his shoulder hurt and he needed therapy [Doc. 44-2 at 6]. An unspecified officer responded "I will talk to the doctor when he comes on Friday" [*Id.*].

On November 2, 2021, Defendant Nurse Ashley Rambo began working at the Jail [Doc. 36-4 at 2]. On November 18, 2021, she performed a physical on Plaintiff [Doc. 39-5 at 6]. In the medical notes from the physical, Defendant Nurse Rambo stated that Plaintiff had limited range of motion and occasional sharp pains from his shoulder injury [*Id.*].

3

On December 21, 2021, Plaintiff was scheduled to see Defendant Dr. Glover, seemingly because Defendant Nurse Rambo made the appointment [*See*, *e.g.*, Docs. 39-1 at 3; 36-4 at 2]. But Defendant Nurse Rambo was not present at the Jail that day, and other nurses told Defendant Dr. Glover that Plaintiff refused to see him [*See, e.g.,* Docs. 39-1 at 3; 36-4 at 2]. On December 28, 2021, Plaintiff again was scheduled to see Defendant Dr. Glover, but Defendant Dr. Glover reviewed the medical records and declined to see Plaintiff based on his determination that Plaintiff did not need any change in treatment, because "conservative treatment with time to heal and pain relief is the standard treatment for an injury like [Plaintiff's]" and "pain was expected during [Plaintiff's] healing process for 6-12 months" [Doc. 39-4 at 4].

Between December 17 and December 27, 2021, Plaintiff filed facility and medical grievances addressing, among other things, pain in his arm and shoulder and the doctor not seeing him despite his requests and scheduled appointments [Docs. 44-2 at 1-7; 44-3 at 1-8]. The responses to these grievances indicated, in relevant part, that (1) an officer would talk to the nurses and/or the doctor; (2) at some point Plaintiff had been placed on the doctor's list but a nurse stated that Plaintiff refused to see the doctor; and (3) on another occasion, the doctor had reviewed the medical records and decided that he did not need to see Plaintiff for a scheduled appointment [*Id.*]. Defendant Dr. Glover did not see any of Plaintiff's grievances until after Plaintiff filed this lawsuit [Doc. 39-1 at 5].

On February 16, 2022, Plaintiff saw the Jail psychologist [Doc. 42 at 168]. During this appointment, Plaintiff was "tearful" and complained about his shoulder, a bone sticking out of his shoulder, "significant pain," and the doctor's refusal to see him [*Id.*]. The psychologist then emailed various individuals, including Defendants Nurse Rambo and Dr. Glover [*Id.*]. In this email, the psychologist described what had occurred at the appointment and asked Defendant Dr.

Glover to see Plaintiff about his "shoulder, depression[,] and anxiety" [*Id.*]. On the same day, Defendant Nurse Rambo sent an email to, among others, Defendant Dr. Glover [*Id.* at 10]. In this email, she noted that Plaintiff had requested to see the doctor about his increased pain in his shoulder and his difficulty "resting at night" [*Id.*].

On February 22, 2022, Defendant Dr. Glover saw Plaintiff [Doc. 39-1 at 4]. An examination of Plaintiff's shoulder indicated that his "distal clavicle was riding up" [*Id.*]. Defendant Dr. Glover offered to prescribe Plaintiff antidepressant medication because he thought Plaintiff may be depressed, but Plaintiff declined [*Id.*]. Defendant Dr. Glover also discussed with Plaintiff the possibility of Plaintiff having surgery on his shoulder but told him that such surgery was elective, and he doubted Warren County and/or the Sheriff would pay for the elective surgery [Doc. 36-3 at 6].

Defendant Dr. Glover also discussed the possibility of surgery on Plaintiff's shoulder with the Warren County Sheriff at the time, Defendant Tommy Meyers. Defendant Dr. Glover told Defendant Meyers that "in my opinion" the surgery "would be an elective procedure" [*Id.* at 9]. Defendant Dr. Glover considered the surgery elective because "[t]here was no serious medical need for surgery. His life was not threatened. Therefore, to do it would only [be] because he wanted it done for cosmetic reasons" [*Id.* at 9-10]. At his deposition, Defendant Dr. Glover later defined elective treatment as treatment that is "not absolutely necessary to preserve the patient's life or well-being" [Doc. 44-1 at 53-54].

On March 24, 2022, Defendant Nurse Rambo emailed Defendant Dr. Glover about Plaintiff [Doc. 42 at 173]. In the email, Defendant Nurse Rambo stated that Defendant Meyers told her that an attorney for Warren County stated that they did not have to perform a surgery unless it was an "emergency" [*Id.*]. However, Defendant Meyers expressly testified that no

5

shoulder surgery was performed because another doctor, Dr. Jeffrey Peterson, determined that the surgery was not necessary [Doc. 36-6 at 2].

It appears from the record that Plaintiff did not receive any further advanced treatment for his shoulder after March 24, 2022 [Docs. 39-5; 39-4 at 4]. Plaintiff was released from jail on May 24, 2022 [*Id.*]. Since his release, Plaintiff has not sought treatment for his shoulder despite the fact that he has health insurance [Doc. 39-4 at 4-6].

Plaintiff filed his operative Amended Complaint against Defendants Warren County, Tennessee; Tommy Meyers; Dannie Glover; and Ashley Rambo on January 27, 2023 [Doc. 9]. In that Amended Complaint, Plaintiff raises one count against all Defendants for violation of Section 1983 by inflicting cruel and unusual punishment in violation of the Eighth Amendment [Doc. 9 at 7]. Defendants Warren County; Nurse Rambo; and Meyers filed a motion for summary judgment [Doc. 36]. And Defendant Dr. Glover filed a separate motion for summary judgment [Doc. 39]. As discussed above, the Court receives Plaintiff's opposition to the motions [Doc. 44] as timely filed.

## 2. Expert Evidence

The Defendants filed various declarations from medical professionals in support of their motions for summary judgment [*See* Docs. 36, 39]. However, Plaintiff, who is represented by counsel, chose not to submit any declarations from medical professionals [*See* Doc. 44].

### a. *Declaration of Dr. Jeffrey Peterson*

All Defendants rely on a sworn declaration from Dr. Peterson, an orthopedic surgeon who supervises PA Gilley [*See* Docs. 36-1; 39-3]. Dr. Peterson's declaration provides that his office appropriately recommended conservative treatment of Plaintiff's Type III acromioclavicular ("AC") joint injury, did not order that Plaintiff receive physical therapy, and provided Plaintiff

with exercises he could do in his cell. [Doc. 36-1 at 2]. Dr. Peterson further states that Type III AC joint injuries, like Plaintiff's, "are rarely repaired surgically" and that surgery on these types of injuries is "considered an elective surgery" that is done mostly "for high-level athletes" [*Id.*]. Dr. Peterson notes that Plaintiff "is not a high-level athlete" and therefore opines that "AC joint surgery would have been elective for [Plaintiff]" [*Id.*].

Dr. Peterson also provides that if jail officials had referred Plaintiff back to Dr. Peterson's office between October 14, 2021 and Plaintiff's release from jail in May 2022, Dr. Peterson's office still would have recommended conservative treatment—not surgery [*Id.* at 2-3]. Dr. Peterson further asserts that the success of surgery on an AC joint depends on "strict adherence to activity limitations and therapy recommendations," but "compliance with these requirements by incarcerated inmates is poor" [*Id.* at 3]. Additionally, according to Dr. Peterson, if Plaintiff had complied with the conservative treatment Dr. Peterson's office recommended for him, "he should have had an excellent recovery from his injury" [*Id.*]. Dr. Peterson also notes that, while some individuals "continue to have a slight visible displacement of the distal end of the clavicle following an AC joint injury, [he] would not recommend or perform surgery" on Plaintiff to correct such a deformity because that "would essentially be cosmetic surgery" [*Id.*].

### b. Declaration of Dr. Gregory Roberts

Defendants Warren County, Meyers, and Nurse Rambo also filed a sworn declaration from orthopedic surgeon Dr. Gregory Roberts [Doc. 36-2]. In this declaration, Dr. Roberts states that his review of Plaintiff's records establishes that Plaintiff sustained an AC injury to his shoulder that "did not and does not require surgical intervention and did not, and does not, require physical therapy" [*Id.* at 1-2]. He further opines that PA Gilley "correctly diagnosed and assessed" the injury and "recommended the appropriate medical care and treatment for [Plaintiff]" [*Id.* at 2]. Dr.

Roberts also states that Plaintiff could have performed the exercises PA Gilley recommended and did not require "formal physical therapy" [*Id.*]. Moreover, Dr. Roberts provides that injuries like Plaintiff's are treated conservatively—"the standard of care does not require surgery . . . or physical therapy to function normally once the injury has healed"[*Id.*]. Dr. Roberts states that he is familiar with the standard of care applicable to PA Gilley, Dr. Peterson, Defendant Nurse Rambo, and Defendant Dr. Glover in treating Plaintiff, and their treatment did not fall below the standard of care [*Id.* at 2-4].

Additionally, Dr. Roberts states that (1) Plaintiff's shoulder protrusion is cosmetic and does not interfere with Plaintiff's use of his shoulder, (2) he reviewed a video from Plaintiff's deposition showing his shoulder range of motion, (3) Plaintiff's shoulder range of motion appears normal, (4) it appears that Plaintiff's injury "appropriately resolved without formal physical therapy or surgery," and (5) performing surgery for Plaintiff's shoulder would "probably have the same functional result . . . but has the risk of necessary complications with surgery" [*Id.* at 3]. He further adds that, if he had seen Plaintiff in his office, he would have recommended the same or similar exercises that PA Gilley recommended and "would have recommended against surgical intervention" [*Id.* at 3-4].

### c. *Declaration of Defendant Nurse Rambo*

Defendants Warren County, Meyers, and Nurse Rambo also filed a sworn declaration from Defendant Nurse Rambo [Doc. 36-4]. In this declaration, Defendant Nurse Rambo states that no physician ever ordered surgery or physical therapy for Plaintiff, and she also opines that her care and treatment of Plaintiff was within the accepted standard of care [*Id.* at 1, 2].

### d. Declaration of Defendant Dr. Glover

Defendant Dr. Glover also filed his own sworn declaration [Doc. 39-1]. Defendant Dr. Glover states that his decision not to see Plaintiff on December 28, 2021 "was appropriate and within the standard of care" [*Id*. at 4]. He also provides that his decision that surgery on Plaintiff's shoulder was elective was correct, that he did not determine whether the Warren County Jail would pay for Plaintiff's surgery, that the only benefit of shoulder surgery for Plaintiff would have been cosmetic, that Plaintiff had over-the-counter pain medications available at the Jail's "med pass," that Plaintiff's medical care for his AC joint injury met the standard of care, and that he was not deliberately indifferent to Plaintiff's "serious medical needs" [*Id.* at 4-5].

### e. Declaration of Dr. Matthew Willis

Defendant Dr. Glover also filed a sworn declaration from Dr. Matthew Willis, an expert in AC joint injuries [Doc. 39-2 at 3]. Dr. Willis opines that (1) Plaintiff had a Type III AC joint injury; (2) "the vast majority of AC joint injuries are managed non-surgically, including Type III injuries;" (3) AC joint injuries "do not affect mobility or cause significant pain" after "an opportunity to heal and do[] exercises to rehabilitate the joint;" (4) surgery on AC joint injuries has a failure rate of approximately twenty percent (20%) and surgery complications can be worse than the injury; (5) Defendant Dr. Glover "properly managed [Plaintiff's] AC joint injury in a manner that was within the standard of care and was certainly not deliberately indifferent to [Plaintiff's] serious medical needs;" (6) Defendant Dr. Glover's decision not to see Plaintiff on December 28, 2021 because Plaintiff did not need further treatment other than continued over-the-counter medication was "appropriate and within the standard of care;" (7) Defendant Dr. Glover's determination that surgery on Plaintiff's AC joint injury would be elective was correct; and (8) Plaintiff's incarceration, history of drug use, history of physical altercations with other inmates,

and failure to follow PA Gilley's exercise recommendations made him a poor candidate for AC joint surgery [Doc. 39-2 at 1-8].

B. Analysis

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts in the light most favorable to the non-moving party and make all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Nat'l Satellite Sports, Inc.*, 253 F.3d at 907. The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; Fed. R. Civ. P. 56). "A genuine issue for trial exists only when there is sufficient 'evidence on which the jury could reasonably find for the plaintiff.'" *Nat'l Satellite Sports, Inc.*, 253 F.3d at 907 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 249 (1986)). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis in original) (quoting *Anderson*, 477 U.S. at 247-48).

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). The Court thus "begins by identifying the specific constitutional right," Plaintiff alleges was violated. *Id.* at 394

(citations omitted). Here, Plaintiff alleges that Defendants violated his Eighth Amendment rights [*See* Docs. 9 at 7; 44 at 1].

A prison official violates the Eighth Amendment if he or she is deliberately indifferent to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). "[T]he Supreme Court has held that the failure to protect prisoners from harm violates the ban on cruel and unusual punishment only if the prisoners prove both objective and subjective elements." *See Lawler ex rel. Lawler v. Hardeman Cnty.*, 93 F.4th 919, 926-27 (6th Cir. 2024) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "Objectively, prisoners must have faced a 'substantial risk of serious harm.'" *Id.* "Subjectively, officers must have acted with 'deliberate indifference' to this risk." *Id.* "Under this test, an inmate must prove both that an officer subjectively knew of facts that created a substantial risk of serious harm to the inmate and that the officer subjectively concluded that this risk existed." *Id.* (citing *Farmer*, 511 U.S. at 837).

"To satisfy the objective component, a plaintiff must identify a serious medical need, which is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martin v. Warren Cnty., Ky*, 799 F. App'x 329, 338 (6th Cir. 2020) (cleaned up). "When a serious medical need is obvious, a plaintiff does not need to provide verifying medical evidence of harm." *Id.* (citing *Blackmore v. Kalamazoo, Mich.*, 390 F.3d 890, 899-900 (6th Cir. 2004)). "But when a serious medical need is not obvious and 'is based on the prison's failure to treat a condition adequately . . .' plaintiffs must supply medical proof of injury at summary judgment." *Id.* (quoting *Blackmore*, 390 F.3d at 898). This is required so that the Court can "assess whether the delay [in adequate medical care] caused a serious medical injury." *Id.* (alteration in original).

"A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful." *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (citing *Farmer*, 511 U.S. at 844). A "desire for additional or different treatment does not by itself suffice to support an Eighth Amendment claim." *Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017) (concluding that the absence of medical testimony showing medical necessity for the desired treatment "is fatal to" the plaintiff's claim). Similarly, allegations that a prisoner did not receive the medical treatment he wanted are not sufficient alone to state a Section 1983 Eighth Amendment claim. *See Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017). Thus, where a prisoner received medical care for the applicable condition, his disagreement with the adequacy of that care generally does not rise to the level of a constitutional violation. *See Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1996) ("federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law").

Plaintiff's claim arises out of six separate time periods: (1) October 8-11, 2021; (2) October 11-14, 2021; (3) October 25 and 27, 2021; (4) November 18, 2021; (5) December 17-28, 2021; and (6) February 17, 2022 through Plaintiff's release on May 24, 2022. The Court addresses each time period in turn, then addresses the entire course of treatment collectively.

    **1.    October 8-11, 2021**

None of the Parties affirmatively raised the initial three-day delay in addressing Plaintiff's shoulder injury in their summary judgment filings. But for completeness, the Court analyzes any claim that Plaintiff may have sought to bring exclusively based on this time period. Nothing in the record permits the Court to plausibly infer that any Defendant was involved in the three-day delay, over a weekend, in taking Plaintiff to a hospital for an x-ray. Nor is there any evidence in

12
Case 4:22-cv-00049-KAC-SKL   Document 71   Filed 05/08/24   Page 12 of 19   PageID #: 1146

the record that this delay deprived Plaintiff of his Eighth Amendment rights. Accordingly, Defendants are entitled to judgement as a matter of law on any claim arising from this time period. *See* Fed. R. Civ. P. 56(a); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to even state a Section 1983 claim).

### 2. October 11-14, 2021

Defendant Dr. Glover referred Plaintiff for an x-ray that occurred on October 11, 2021, and then referred Plaintiff to an orthopedic specialist, PA Gilley, who saw Plaintiff on October 14, 2021 [Docs. 36-3 at 3; 39-5 at 22-23, 24-25]. PA Gilley advised Plaintiff to do certain exercises in his cell and noted that the nurses would contact Plaintiff if his pain continued or worsened [Doc 39-5 at 24-25]. Thus, the undisputed evidence is that Plaintiff received medical care for his injury from October 8 through 14. To the extent that Plaintiff alleges that he should have been referred for shoulder surgery at that time, he has failed to set forth medical proof such that the Court could plausibly determine that any delay in performing a more invasive procedure "caused a serious medical injury." *See Martin*, 799 F. App'x at 338. Moreover, the record contains unchallenged expert medical proof that any omission was not detrimental to Plaintiff [*See* Doc. 36-2 at 3-4].

Plaintiff has variably testified that PA Gilley did not show Plaintiff how to do the recommended exercises and that Plaintiff was not sure whether PA Gilley did or did not show him how to do the exercises [Doc. 39-4 at 8]. But even presuming no direction, there is no evidence that any specific named Defendant (1) subjectively knew that Plaintiff did not understand how to do the exercises and (2) subjectively concluded that this deficiency created a substantial risk of

13

serious harm to Plaintiff. *See Lawler*, 93 F.4th at 926-27. Without more, Defendants are entitled to summary judgment on Plaintiff's claim arising out of this time period.

### 3. October 25 and 27, 2021

In an attempt to avoid summary judgment, Plaintiff emphasizes the fact that he filed one facility grievance and two medical grievances regarding his injury on October 25 and 27, 2021 [Docs. 44-2 at 6; 44-3 at 7-8]. But the record shows that unspecified officer(s) at the Jail responded to Plaintiff's grievances. The record does not include any proof from which the Court could plausibly infer that any Defendant (1) subjectively knew about these grievances and (2) subjectively concluded that failure to take Plaintiff's preferred action in response to the grievances created a substantial risk of serious harm to Plaintiff. *See Lawler*, 93 F.4th at 926-27. To the contrary, both Defendant Nurse Rambo and Defendant Dr. Glover provided undisputed proof that they were not even aware of these grievances during the relevant time [*See* Docs. 36-4 at 2 (Defendant Nurse Rambo was not employed at the Warren County Jail at the time Plaintiff filed these grievances); 39-1 at 5 (Defendant Dr. Glover did not see Plaintiff's grievances until after Plaintiff filed his lawsuit)].

Similar deficiencies exist as to Defendants Warren County and Meyers. To the extent that Plaintiff seeks to hold Defendant Warren County liable for the lack of additional medical care in response to these grievances, he has not set forth any proof that a custom or policy of the County caused this omission such that Defendant Warren County could be liable for the omission. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that a municipality may be liable under Section 1983 where its official custom or policy causes a constitutional rights violation). And to the extent that the Warren County Sheriff's Office had any involvement in the receipt and processing of grievances at the Jail, Defendant Meyer, as the former Warren County Sheriff,

cannot be liable based solely on the actions of an employee. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Monell*, 436 U.S. at 691 (finding that liability under Section 1983 may not be imposed merely because a defendant "employs a tortfeasor"); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) ("Plaintiff must show that the supervisors somehow encouraged or condoned the actions of their inferiors."). Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim arising out of this time period.

### 4. November 18, 2021

On November 18, 2021, Defendant Nurse Rambo noted that Plaintiff still had a limited range of motion and occasional sharp pains due to his injury, but she did not change the course of treatment in response to this complaint [Doc. 39-5 at 6]. The undisputed medical proof is that this was within the applicable standard of care [Doc. 36-4 at 2]. And Plaintiff has not responded with any medical proof that any omission was detrimental to him in any way, as is his burden at this point in the litigation. *See Martin*, 799 F. App'x at 338. In fact, the only medical proof in the record indicates that any omission was not detrimental [*See* Doc. 36-2 at 3-4]. Accordingly, Defendant Nurse Rambo is entitled to summary judgment on any claim arising from this event.

### 5. December 17-28, 2021

Between December 17 and 28, 2021, Plaintiff filed facility and medical grievances regarding his shoulder injury raising, among other things, (1) pain in his arm and shoulder and (2) that the doctor did not see him despite his requests and scheduled appointments [Docs. 44-2 at 1-7; 44-3 at 1-8]. Plaintiff was also scheduled to see Defendant Dr. Glover on December 21, 2021 seemingly because Defendant Nurse Rambo made this appointment [*See, e.g.*, Docs. 39-1 at 3;

36-4 at 2]. But Defendant Nurse Rambo was not present at the Jail that day, and other nurses told Defendant Dr. Glover that Plaintiff refused to see him [*See, e.g.,* Docs. 39-1 at 3, 36-4 at 2]. And Plaintiff was scheduled to see Defendant Dr. Glover on December 28, 2021, but Dr. Glover reviewed Plaintiff's medical records and determined that he did not need to see Plaintiff because "conservative treatment with time to heal and pain relief is the standard treatment for an injury like [Plaintiff's]" and "pain was expected during [Plaintiff's] healing process for 6-12 months" [*Id.* at 4].

The only record evidence in this case is that these decisions and actions (1) were within the applicable standard of care and (2) did not cause any detriment to Plaintiff. Plaintiff has not identified any medical proof from which a reasonable jury could conclude that the above care, including medication to relieve expected pain, is not reasonable treatment. *See Rhinehart*, 894 F.3d at 738. Nor is there any evidence that failure to provide Plaintiff's preferred treatment "caused a serious medical injury." *See Martin*, 799 F. App'x at 338. To the extent that Plaintiff's claim is based on any failure by Defendants Dr. Glover or Nurse Rambo to determine that Plaintiff did not perform the exercises recommended by PA Gilley, without more, the Constitution does not reach this failure. Under the law, to establish liability, Plaintiff "must prove both that an officer **subjectively knew of facts** that created a substantial risk of serious harm to the inmate and that the officer **subjectively concluded that this risk existed**." *Lawler*, 93 F.4th at 926-27. Those facts simply are not in the record. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim arising from this period of time.

### 6. February 16, 2022 through May 24, 2022

Plaintiff saw the Jail psychologist on February 16, 2022. Afterwards, the Jail psychologist emailed Defendants Nurse Rambo and Dr. Glover, describing the appointment and asking

Defendant Dr. Glover to see Plaintiff about his "shoulder, depression[,] and anxiety" [Doc. 42 at 168]. That same day, Defendant Nurse Rambo sent an email to Defendant Dr. Glover, noting that Plaintiff had requested to see the doctor about his increased pain in his shoulder and his difficulty "resting at night" [*Id.* at 10]. Defendant Dr. Glover saw Plaintiff on February 22, 2022. He noted that Plaintiff's "distal clavicle was riding up" and offered to prescribe Plaintiff antidepressant medication, but Plaintiff declined that offer [Doc. 39-1 at 4]. Defendant Dr. Glover also discussed the possibility of Plaintiff having surgery on his shoulder but told him that such surgery was elective, and would likely not be paid for [Doc. 36-3 at 6]. Defendant Dr. Glover also told Defendant Meyers that surgery on Plaintiff's shoulder would be elective [*Id.* at 9].

On March 24, 2022, Defendant Nurse Rambo emailed Defendant Dr. Glover about Plaintiff and stated that Defendant Meyers told her that an attorney for Warren County stated that they did not have to do a surgery unless it was an "emergency" [Doc. 42 at 173]. However, Defendant Meyers testified that Plaintiff did not receive surgery because Dr. Peterson determined that the surgery was not necessary [Doc. 36-6 at 2]. Regardless, it appears from the record that Plaintiff did not receive any enhanced treatment for his shoulder injury from March 24, 2022 until his release [Docs. 39-5; 39-4 at 4].

It appears from Plaintiff's response in opposition to Defendants' motions for summary that he seeks to challenge (1) Defendant Dr. Glover's determination that shoulder surgery was elective; (2) Defendants' failure follow up on his shoulder injury with the orthopedic specialist's office after the initial visit, despite PA Gilley's notes indicating that the nurses would do so; and (3) Defendant Warren County's apparent reliance on a statement from a Warren County attorney indicating that Defendant Warren County did not have to provide Plaintiff surgery unless it was an "emergency." But, again, the evidence in the record negates Plaintiff's arguments

Here too, the record evidence is that these medical decisions and actions of medical professionals (1) were within the applicable standard of care and (2) did not cause any detriment to Plaintiff [*See, e.g.*, Docs. 36-1 at 2-3; 36-2 at 1-4; 39-1 at 4-5; 39-2 at 1-8]. Failure to offer any contrary medical proof "is fatal to" Plaintiff's claim. *See Anthony*, 701 F. App'x at 464; *see also Rhinehart*, 894 F.3d at 738. Further, the record shows that Defendant Warren County's decision not to provide Plaintiff shoulder surgery was based on inputs other than the opinion of a Warren County attorney that Warren County did not have to pay for the surgery unless it was "an emergency" [*See* Doc. 42 at 173]. In fact, Defendant Meyers, the Sheriff at the time who allegedly reported what the Warren County lawyer said, testified that Plaintiff did not receive shoulder surgery specifically because Dr. Peterson determined that the surgery was not necessary [*See* Doc. 36-6 at 2]. Further, even if Warren County's decision were based solely on an inaccurate understanding of its Constitutional obligations, Plaintiff has failed to establish that any alleged policy or custom of Warren County caused a violation of Plaintiff's constitutional rights. *See Monell*, 436 U.S. at 691. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim arising from this period of time.

### 7. Collective Course of Treatment

Even when the Court considers the entire course of treatment for Plaintiff's shoulder injury while incarcerated, Defendants are entitled to summary judgement. The record is replete with expert proof that the overall treatment of Plaintiff's shoulder injury by Defendants Dr. Glover and Nurse Rambo complied with the applicable standard of care at each turn and collectively [*See, e.g.*, Docs. 36-1 at 2-3; 36-2 at 1-4; 39-1 at 4-5; 39-2 at 1-8]. Plaintiff has not countered this expert proof with evidence that (1) objectively, he faced a "substantial risk of serious harm" if his preferred interventions were not performed on his shoulder or (2) any

18

Defendant officer "subjectively knew of facts that created a substantial risk of serious harm to [him] . . . and that the officer subjectively concluded that this risk existed." *See Lawler*, 93 F.4th at 926-27. Without such evidence, the Court cannot conclude that Defendant Dr. Glover or Defendant Nurse Rambo violated Plaintiff's Eighth Amendment rights. And the record does not permit the Court to infer that Defendant Warren County or Defendant Meyers is liable because (1) neither Defendant Dr. Glover nor Defendant Nurse Rambo violated Plaintiff's Eighth Amendment rights, (2) Plaintiff has not identified any other violation of his Eighth Amendment rights by an individual acting on behalf of the County or Sheriff's Office at the relevant time, and (3) even if a violation occurred, there is no evidence (a) connecting that violation to a specific Warren County policy or custom or (b) demonstrating that Defendant Meyers encouraged or condoned any such violation. *See Gambrel v. Knox Cnty., Ky.*, 25 F.4th 391, 408 (6th Cir. 2022) (requiring a plaintiff to "connect" an employee's conduct that deprived a constitutional right to a specific "municipal 'policy' or 'custom.'" (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997))); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) ("Plaintiff must show that the supervisors somehow encouraged or condoned the actions of their inferiors."). Accordingly, Defendants are entitled to summary judgment.

### III. CONCLUSION

For the reasons set forth above, the Court (1) **GRANTS** Plaintiff's unopposed motion for extension [Doc. 43], (2) **GRANTS** Defendants' motions for summary judgment [Docs. 36, 39], and (3) **DISMISSES** this action. A Judgment Order shall issue.

SO ORDERED.

/s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge

19

Case 4:22-cv-00049-KAC-SKL   Document 71   Filed 05/08/24   Page 19 of 19   PageID #: 1153